J-S07042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM VILLINES | : | |
| | : | |
| Appellant | : | No. 898 EDA 2021 |

Appeal from the PCRA Order Entered April 26, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0015464-2009

BEFORE:  DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED AUGUST 14, 2023**

Appellant, William Villines, appeals from the order entered in Philadelphia County Court of Common Pleas, denying his petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court opinion sets forth the relevant facts and procedural history of this case as follows:

> On September 17, 2009, Anwar Connors ("Decedent") was shot and killed in the city and county of Philadelphia.  On October 15, 2009, Appellant was arrested and charged with murder generally, conspiracy to commit murder, various firearms charges, and [possessing instruments of crime ("PIC")].
>
> A jury trial began on January 18, 2011.  During the course of the trial, it was established that Appellant was at the house of his cousin and co-defendant, Jermaine Villines.  Testimony was provided that Decedent got into a verbal

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

argument with Jermaine over money. This argument occurred outside of the co-defendant's house and was witnessed by Appellant. Upon witnessing this argument, Appellant retrieved a firearm and went outside and followed Decedent as he walked towards his vehicle. Decedent then observed Appellant's firearm and turned around with his arms raised saying "whoa, whoa, hold on." Appellant asked Jermaine "Hit him?" to which Jermaine replied "Green light. Hit him." Appellant then shot [D]ecedent and after he fell to the ground fired a total of five or six more shots at him. Decedent was struck three times and died as a result of the gunshot wounds. Appellant made a statement to Detectives after his arrest, generally acknowledging the aforementioned facts and also confirmed that [D]ecedent was unarmed. However, he indicated that he believed [D]ecedent was going to his car to retrieve a firearm.

[At trial, Appellant testified that Decedent showed Appellant and co-defendant that Decedent had a gun in his waistband earlier that night. Appellant sat inside the house, drank "a couple of drinks," and heard an argument outside. He grabbed his gun and went to the porch. Appellant testified that Decedent threatened that he was going to kill Appellant and his cousin and go to his car to get a gun. As Decedent started to walk to the car, Appellant shot at him because he was scared.]

On January 24, 2011, following a jury trial…, Appellant was found guilty of First Degree Murder, Attempted Murder, Criminal Conspiracy to Commit Murder, various firearms charges, and PIC. On the same date, Appellant was sentenced to mandatory life without parole and a consecutive term of 15 to 40 years of incarceration.

On January 31, 2011, Appellant filed timely post-sentence motions, which were denied on May 31, 2011. On June 14, 2011, Appellant filed a timely Notice of Appeal to the Pennsylvania Superior Court. On May 24, 2013, the Pennsylvania Superior Court affirmed the judgment of sentence. On May 29, 2013, Appellant filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. The aforementioned petition was denied on October 29, 2013. [*See Commonwealth v. Villines*, 81 A.3d 1004 (Pa.Super. 2013) (unpublished memorandum), *appeal*

*denied*, 621 Pa. 703, 78 A.3d 1091 (2013).] On January 2, 2014, Appellant filed a timely, first PCRA Petition.

Earl G. Kauffman, Esquire, was assigned to be Appellant's first PCRA Counsel. Attorney Kauffman determined that this issue lacked merit and filed ***Finley*** Letters[2] on two separate occasions. After Appellant filed a response to the [Pa.R.Crim.P.] 907 Notice, Attorney Kauffman was removed and Gina A. Amoriello, Esquire ("PCRA Counsel"), was appointed. PCRA Counsel initially filed a ***Finley*** letter opining that all issues in the PCRA Petition lacked merit, prior to filing an Amended PCRA Petition on March 4, 2019. On March 20, 2021, [the] court sent a Dismissal Notice as per Rule 907. On April 28, 2021, [the] court formally dismissed Appellant's PCRA Petition.

(PCRA Court Opinion, filed 1/10/22, at 1-2). Appellant timely filed a notice of appeal on May 1, 2021. On September 23, 2021, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and Appellant timely complied on September 26, 2021.

Appellant raises the following issue for our review:

Did the PCRA [c]ourt err and/or abuse its discretion when it denied [Appellant's] petition under the PCRA seeking a new trial based upon a claim that trial counsel was ineffective for failing to:

a. Pursue a defense based on voluntary intoxication;

b. Have the jury charged with respect to self-defense;

c. Question eyewitness Charles Mason regarding his perceptions and belief about the conduct of [D]ecedent, which was vital to a self-defense claim.

---

[2] ***See Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988).

(Appellant's Brief at 4).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Parker***, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

"Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for

ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. K. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

- 5 -

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

In Appellant's first claim of ineffectiveness, Appellant argues that trial counsel failed to pursue a voluntary intoxication defense to reduce the murder charge from first-degree to third-degree. Specifically, Appellant asserts that there was evidence on the record to support this defense where (1) Appellant told the police he drank "vodka and Pepsi," (2) Appellant testified at trial that he had a couple of drinks and was under the influence, and (3) Appellant told trial counsel that he drank a half of bottle of vodka and smoked marijuana before the incident.

Appellant insists counsel had no reasonable strategic basis for failing to pursue a voluntary intoxication defense. Appellant contends that defense counsel argued at trial that Appellant lacked the intent required for first degree murder, therefore, a voluntary intoxication defense would not have conflicted

with the defense's strategy. Appellant maintains that he suffered prejudice because if counsel pursued the voluntary intoxication defense, there is a reasonable probability that at least one juror would have possessed reasonable doubt about first degree murder, and Appellant would have been convicted of the lesser offense of third-degree murder, which carries a much shorter sentence. Appellant concludes counsel was ineffective on this basis, and this Court must grant relief. We disagree.

Our Supreme Court has explained:

> A defense of diminished capacity grounded in voluntary intoxication is a very limited defense, which does not exculpate the defendant from criminal liability, but, if successfully advanced, mitigates first-degree murder to third-degree murder. The mere fact of intoxication is not a defense; rather, the defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised by voluntary intoxication that he was unable to formulate the specific intent to kill. **In other words, to prove a voluntary intoxication defense, the defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities.** Evidence that the defendant lacked the ability to control his actions or acted impulsively is irrelevant to specific intent to kill, and thus does not constitute support of a voluntary intoxication defense.

*Commonwealth v. Bardo*, 629 Pa. 352, 415-16, 105 A.3d 678, 716 (2014) (internal citations omitted) (emphasis added). *See also Spotz, supra* at 587 Pa. 1, 47, 896 A.2d 1191, 1218 (stating that to warrant finding that homicide does not rise to level of first-degree murder, evidence must demonstrate that defendant was intoxicated to such extent that he was unable to form requisite

intent; in other words, it must be established that defendant was "overwhelmed to the point of losing his sensibilities").

Instantly, the PCRA court concluded that Appellant's claim of ineffectiveness based on counsel's failure to pursue a voluntary intoxication defense lacked arguable merit. The court reasoned:

> Appellant cannot satisfy the first prong of the test for ineffective assistance of counsel—that this claim has arguable merit. This issue was discussed at length in both [counsel's] *Finley* letters as well as in the original 907 Notice issued by [the trial court]. Appellant had originally told police that he had been drinking "vodka and Pepsi." At trial, Appellant then testified that he had "a couple of drinks" and referenced being under the influence. Appellant at some point told [PCRA counsel] that he drank half a bottle of vodka and had been smoking marijuana all day, but it is unclear when Appellant communicated this to PCRA Counsel. Appellant had been represented by various attorneys for four years with numerous *Finley* letters having been written addressing this claim. It is unclear why, if Appellant had actually drank half a bottle of vodka and smoked marijuana all day when he shot [D]ecedent, he failed to mention this in his own defense. Appellant has gone from saying that he consumed an unspecified amount of "vodka and Pepsi," which did not satisfy the requirements for an intoxication defense, to Appellant claiming he drank half a bottle of vodka and smoked marijuana all day long before shooting [D]ecedent. Considering how Appellant appeared to recall the events of that day clearly at his trial, this casts doubt on what Appellant actually consumed that day. Finally, in Appellant's statement to police he indicated that he deliberately brought his firearm with him from his house when he went outside during the confrontation with Decedent because "something told me to take the gun and I took it off the shelf with me." N.T. January 21, 2011, pages 76-77. This shows he exhibited the cognitive tools of deliberation and premeditation that would need to be impaired in order to establish diminished capacity. However, Appellant's actions on the night in question demonstrate that his cognitive ability was sufficient to form

the specific intent to kill, despite some degree of intoxication.[1]

> [1] Upon exiting his house with the firearm, Appellant turned to his cousin [co-defendant] and asked "Hit him[?]" to which [co-defendant] replied "Green light, hit him." N.T. January 19, 2011, page 131 lines 2-6. Appellant's exchange with his cousin prior to shooting [D]ecedent six times demonstrates sufficient cognitive ability to form a specific intent to kill regardless of Appellant's level of intoxication.

(PCRA Court Opinion at 5-6).

We agree with the PCRA court's analysis. As the PCRA court explained, Appellant testified in his own defense and mentioned only that he consumed a "couple of drinks." In his statement to police, Appellant said he drank an unspecified amount of "vodka and Pepsi." Although Appellant claims on appeal that he drank half of a bottle of vodka and smoked marijuana, nothing in the record supports Appellant's assertion that he consumed this amount of alcohol and drugs prior to the shooting. Further, Appellant admitted at trial that he chose to retrieve his gun off the shelf, establishing Appellant's control of his faculties. Under these circumstances, the evidence would not have supported that Appellant was overwhelmed to the point of losing his sensibilities, necessary for a voluntary intoxication defense. **See Bardo, supra**. Thus, Appellant's first claim of ineffectiveness lacks arguable merit. **See K. Smith, supra**. Counsel is not ineffective for failing to pursue a meritless claim. **See Poplawski, supra**.

In Appellant's second claim of ineffectiveness, he argues that counsel failed to seek a jury instruction on either self-defense or imperfect self-defense. Specifically, Appellant acknowledges that counsel initially requested a jury instruction on self-defense. Nevertheless, the court stated it would only issue such an instruction if counsel provided the court with legal authority to support the jury instruction. Although the judge gave counsel the opportunity to provide case law to support the jury instruction requested, Appellant complains that counsel never submitted a memorandum of law. Appellant asserts that there is ample case law that would have supported a self-defense or imperfect self-defense jury instruction under the facts of this case.

Appellant claims that counsel had no reasonable strategic basis for failing to provide the court with the relevant case law. Appellant contends that a self-defense or imperfect self-defense jury instruction would have been consistent with Appellant's theory of the case throughout trial. Appellant maintains he suffered prejudice based on counsel's actions because had the court issued the requested jury instruction, there is a reasonable probability that at least one juror would have possessed reasonable doubt to convict Appellant of first-degree murder. Appellant concludes that counsel was ineffective on this basis, and this Court must grant relief. We disagree.

To succeed on a claim of self-defense, a defendant must show:

> 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly [force] to prevent such harm;
> 2) the defendant did not provoke the threat that resulted in

the slaying; and 3) the defendant did not violate a duty to retreat.

***Commonwealth v. Green***, 273 A.3d 1080, 1084-85 (Pa.Super. 2022) (quoting ***Commonwealth v. Jones***, 271 A.3d 452, 458 (Pa.Super. 2021)). Further, "before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." ***Id.*** at 1085 (quoting ***Commonwealth v. Hansley***, 24 A.3d 410, 420 (Pa.Super. 2011)).

A valid claim of self-defense,

> may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak to [the aforementioned] three specific elements for a claim of self-defense to be placed in issue for a jury's consideration.

***Hansley, supra*** at 420-21. "If there is evidence supporting the three elements of self-defense, then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court." ***See Green supra*** at 1085 (internal citations omitted).

Additionally:

> A defense of "imperfect self-defense" exists where the defendant actually, but unreasonably, believed that deadly force was necessary. However, all other principles of self-defense must still be met in order to establish this defense. The requirements of self-defense are statutory: [t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful

- 11 -

force by such other person on the present occasion. If the defender did not reasonably believe deadly force was necessary[,] he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable. A successful claim of imperfect self-defense reduces murder to voluntary manslaughter.

*Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa.Super. 2012) (internal citations omitted).

Instantly, the PCRA court concluded that this ineffectiveness claim lacked arguable merit, explaining:

> Trial counsel raised the possibility of a self-defense jury instruction prior to the Commonwealth closing.[3] Throughout the Commonwealth's testimony, it became clear that [D]ecedent was walking towards his vehicle when Appellant retrieved a firearm and followed him. When [D]ecedent turned around, he raised his hands in the air and said "whoa, whoa," making it clear that he was unarmed. After Appellant shot Decedent and Decedent fell to the ground, it remained clear that Decedent was unarmed as Appellant shot Decedent at least five more times. Based on these facts, [the trial court] opined that a self-defense instruction was not warranted. [The trial judge] indicated that she would be willing to reconsider the issue if a memo with case law was submitted supporting the use of an instruction given these facts or if new testimony was presented supporting such an instruction.
>
> Appellant's strongest argument was that his testimony provided a sufficient basis to provide either a self-defense or imperfect self-defense claim and therefore [the trial court] would have reconsidered if again raised by [c]ounsel. Appellant testified that he was concerned because he saw Decedent with a gun a few hours earlier. This would not satisfy the second element of reasonably believing he was in imminent danger. Even assuming it was sufficient for the affirmative defense of either self-defense or imperfect self-defense, he would still need to show the other two elements—that he was free from fault in provoking or continuing the difficulty which resulted in the use of deadly

force and that he did not violate any duty to retreat or to avoid the danger. It is undisputed that Appellant retrieved a firearm and then exited the house and followed [D]ecedent to his vehicle. This belies any argument that he was free from fault in continuing the difficulty. Further, exiting the house and pursuing [D]ecedent is the opposite of avoiding danger and was certainly contrary to the duty to retreat. Therefore, the first and third elements were not satisfied for the affirmative defense of either self-defense or imperfect self-defense.

> [3] Considering that [D]ecedent was shot on his way to his vehicle, Appellant would not be able to avail himself to either the affirmative defenses of self-defense or defense of others considering that at the time [D]ecedent was shot, even if self-defense could apply, Appellant would have used unwarranted excessive force. Also, Appellant would have also violated his duty to retreat. Appellant admitted that he argued with Decedent on a porch and that after the argument Appellant entered the house, took the firearm off the shelf, and followed Decedent to his car before shooting him. As such, Appellant violated his duty to retreat by not staying in the house and instead choosing to take the firearm and follow Decedent to his vehicle.

(PCRA Court Opinion at 8-9).

We agree with the PCRA court's analysis. Despite Appellant's testimony that he believed that he was in danger when Decedent was walking to his car to get a gun, Appellant failed to establish that the danger was imminent or that he could not retreat. The prosecutor asked Appellant during cross-examination: "There was nothing stopping you from running into [the house], correct?" Appellant admitted that he could have retreated. (**See** N.T. Trial, 1/21/11, at 96). Under these circumstances, a jury instruction on self-defense was not warranted because Appellant did not establish the three elements for

- 13 -

self-defense or imperfect self-defense. *See Green, supra*. *See also Truong, supra*. Consequently, Appellant's ineffectiveness claim lacks arguable merit. *See K. Smith, supra*.

In his last claim of ineffectiveness, Appellant argues that counsel failed to question eyewitness Charles Mason about his perceptions of Decedent's actions. Specifically, Appellant insists counsel should have cross-examined Mr. Mason about whether he believed Decedent was armed or about to retrieve a gun from the car. Appellant contends counsel had no reasonable strategic basis for failing to pursue this line of questioning. Appellant insists that cross-examining Mr. Mason on his belief about whether Decedent was going to the car to retrieve a gun would have advanced defense counsel's theory of imperfect self-defense. Appellant maintains that he suffered prejudice because testimony from Mr. Mason which corroborated Appellant's testimony regarding whether Decedent was going to get a gun would have given the jury reasonable doubt on Appellant's first-degree murder charge. Appellant concludes counsel was ineffective on this basis, and this Court must grant relief. We disagree.

"Matters concerning the examination and cross-examination of witnesses are matters clearly within the province of trial counsel." *Commonwealth v J. Smith*, 609 Pa. 605, 672, 17 A.3d 873, 912 (2011), *cert. denied*, 567 U.S. 937, 133 S.Ct. 24, 183 L.ed.2d 680 (2012). "The right to representation by counsel to be meaningful necessarily includes the right

to effective representation." *Id.* "The examination into the effectiveness of counsel does not turn on whether other alternatives were more reasonable, employing a hindsight evaluation of the record." *Id.*

Instantly, the PCRA court addressed this claim as follows:

> Trial counsel extensively cross-examined witness Charles Mason regarding the events that night. According to Mason, he witnessed the argument between Co-Defendant Jermaine Villines and Decedent. After diffusing the situation, Mason began to walk away. Mason then heard Co-Defendant Jermaine Villines say "green light, hit him." This was followed by multiple gunshots. Mason then turned around, at which time he saw Appellant standing over Decedent and firing multiple gunshots. As a result, Mason's back was turned in the moments immediately prior to and during the shooting. There was no opportunity for Mason to witness Decedent do anything that would have warranted the use of deadly force. [Appellant] did not offer what facts trial counsel could have used to cross-examine Mason as there was no evidence of prior statements he made that may have supported self-defense.
>
> Appellant specifically wanted counsel to ask "whether [Mason] had reason to believe [D]ecedent was armed or about to retrieve a gun from his vehicle at the time of the incident." Amended Petition, March 5, 2019, page 8. This question would not have changed the outcome of the case as Mason was questioned by [co-defendant's] counsel about this topic:
>
> > ATTORNEY SERVER: "[Decedent] got shot right next to the passenger's side door there to that vehicle, didn't he?"
> >
> > WITNESS MASON: "Yes."
> >
> > ATTORNEY SERVER: "Like he was getting into the car, right?"
> >
> > WITNESS MASON: "I don't know."

- 15 -

ATTORNEY SERVER: "Well, that was the car [Decedent] was driving, right?"

WITNESS MASON: "Yes."

ATTORNEY SERVER: "So he got shot right next to the passenger's side door as opposed to the driver's side; isn't that right?"

WITNESS MASON: "Yes."

ATTORNEY SERVER: "If we can put up C-8."

ATTORNEY SERVER: "That's exactly where [Decedent] got shot, right at that spot where the bloodstain is; isn't that right?"

WITNESS MASON: "Yes."

ATTORNEY SERVER: "Trying to get in the passenger's side of the vehicle?"

WITNESS MASON: "I don't know."

ATTORNEY SERVER: "The side where the gun might have been located?"

WITNESS MASON: "I don't know."

ATTORNEY SERVER: "Well, you saw him carry a gun, didn't you?"

WITNESS MASON: "No."

ATTORNEY SERVER: "If we could put up C-11."

ATTORNEY SERVER: "Do you see the windshield of that vehicle?"

WITNESS MASON: "Yes."

ATTORNEY SERVER: "Is that [Decedent's] vehicle?"

WITNESS MASON: "Yes."

Witness Mason had every opportunity to express his belief as to whether or not decedent was going to retrieve a weapon in his vehicle. While [co-defendant's] counsel did not specifically ask the witness about his subjective belief, these questions certainly did open the door for Mason to express same. His response that he did not know if [Decedent] was trying to get into the passenger side or if he might have had a gun located there answered the question posed by Appellant. Repeating this question again [by Appellant's trial counsel] would be questionable in terms of admissibility, since it was already asked and answered. Further, Witness Mason had his back turned and did not know that Decedent was in the area of Decedent's vehicle until Mason turned around. Mason testified that he believed that [D]ecedent was following Mason back into Mason's house. NT. January 19, 2011, page 181 lines 9-12. As a result, there would have been no point in time where Mason could have formed a belief as to why Decedent was going to his car until after the shooting. Therefore, any "perceptions or beliefs" would be based upon hindsight.

Even if this could satisfy the first prong of ineffective assistance of counsel, there would be a reasonable basis for not asking the question again. Once trial counsel saw that Mason refused to offer a favorable statement when this question was posed by counsel for Co-Defendant Jermaine Villines, there would be potential negative consequences of revisiting this topic, such as drawing attention to the fact that [Decedent] was unarmed when he was shot repeatedly by Appellant. Assuming the court allowed trial counsel to ask this question again, possibly using more subjective phrasing, the consequences could have been disastrous to Appellant's defense. Mason had already declined to offer a belief that Decedent may have been going to retrieve a firearm from the passenger seat. There was no prior statement that would have supported the idea that Mason believed that [D]ecedent posed a threat to either Appellant or his Co-Defendant cousin Jermaine Villines. An attorney would have a reasonable basis for not asking this question when he knew the witness was not readily offering a favorable response. Consequently Appellant cannot prove ineffective assistance of counsel.

(PCRA Court Opinion at 11-13).

We agree with the PCRA court's analysis. Cross-examination of Mr. Mason by co-defendant's counsel suggested that Mr. Mason was not aware if Decedent was going to the vehicle to retrieve a gun. Additionally, nothing in the record supports Appellant's contention that further cross-examination of Mr. Mason on this topic by Appellant's trial counsel would have yielded favorable testimony to Appellant. ***See J. Smith, supra***. Rather, as the PCRA court explained, additional testimony from Mr. Mason on this topic might have hurt Appellant's case instead of helping it. Under these circumstances, Appellant's final ineffectiveness claim lacks arguable merit. ***See K. Smith, supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2023