2021 PA Super 250

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARL JONES | : | |
| | : | |
| Appellant | : | No. 938 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 23, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013282-2018

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                     **FILED:  December 16, 2021**

Appellant, Carl Jones, appeals from the judgment of sentence imposed after his conviction of third-degree murder[1] at a bench trial. After careful review, we affirm.

This case arises out of Appellant's fatal shooting of another patron (Victim) at the 1313 Bar in Duquesne, Pennsylvania on the night of August 12 and 13, 2018.  Appellant was charged with criminal homicide, possession of a firearm by a person prohibited, and carrying a firearm without a license.  The possession of a firearm by a person prohibited charge was severed and charged under a different docket number.  Appellant waived his right to a jury

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

trial and all of the charges in both dockets were tried at a bench trial on October 28, 2019.

It was undisputed at trial that Appellant shot and killed Victim and the critical issues were Appellant's state of mind and whether he acted in self-defense or in an unreasonable belief that his life was in danger. The Commonwealth called as witnesses four detectives and a forensic investigator who investigated the scene of the shooting and the bartender and Victim's brother, both of whom were present when the shooting occurred. The Commonwealth also played video from the bar's surveillance system that showed the shooting and the events before and after the shooting. N.T. Trial at 58-61, 67-68. Appellant's counsel stipulated that the surveillance video was authentic and depicted the events that happened at the 1313 Bar on the night of the shooting, did not object to the playing of the video, and cross-examined the detective who had retrieved the video concerning what the video showed. *Id.* at 52-69, 154. The Commonwealth did not move for admission of the video, but the trial court, the Commonwealth, and Appellant all treated the video as admitted evidence after the Commonwealth rested. *Id.* at 111, 154-59, 164, 169, 173-75, 177.

Appellant testified in his own defense and called as a witness the woman who was with him at the bar, a person that Appellant called his aunt. Appellant's counsel played portions of the video in his examination of that witness and in his closing argument and argued in his closing argument that

the video showed that Appellant acted in self-defense.  N.T. Trial at 119-22, 155-57, 164.

The trial court found Appellant not guilty of first-degree murder, but found him guilty of third-degree murder and both firearms offenses.  N.T. Trial at 176-79.  In rejecting Appellant's claim of self-defense, the trial court considered and relied on the video that was played at trial.  *Id.* at 177-79; Trial Court Opinion at 2-3, 7-10.  On January 23, 2020, the trial court sentenced Appellant to 20 to 40 years' imprisonment on the third-degree murder conviction and imposed no further penalty for the carrying a firearm without a license conviction.  N.T. Sentencing at 36-37; Sentencing Order.  In the separate docket, the trial court imposed a consecutive sentence of $3^{1}/_{2}$ to 7 years for possession of a firearm by a person prohibited.  N.T. Sentencing at 36.

Appellant filed a timely post-sentence motion seeking to vacate his third-degree murder conviction on the grounds that the evidence was insufficient to disprove self-defense and seeking a new sentencing hearing.  In that post-sentence motion, Appellant again asserted that the video was evidence before the trial court that could be considered in ruling on the sufficiency of the evidence and noted, without objection, that the trial court relied on the video in reaching its verdict.  Post-Sentence Motion at 3, 5-8.  On August 24, 2020, the trial court denied Appellant's post-sentence motion.

Appellant timely appealed the judgment of sentence in the third-degree murder case. In this appeal, Appellant argues that the evidence was insufficient to support his third-degree murder conviction and that this Court cannot consider the video recording of the shooting in determining whether the evidence was sufficient because the video was not admitted in evidence.

We first address whether the surveillance video played at trial constitutes evidence that this Court may consider in ruling on Appellant's sufficiency of the evidence claim.[2] Appellant argues the video is not part of the evidentiary record in this appeal because no formal motion was made at trial to admit the video and the trial court did not formally admit it into evidence. We do not agree.

Appellant is correct that exhibits that are merely marked for identification and submitted by the offering party do not constitute evidence on which a finder of fact can rely. *See Department of Transportation, Bureau of Driver Licensing v. Doyle*, 616 A.2d 201, 202 n.4 (Pa. Cmwlth. 1992); *Denver Nursing Home v. Department of Public Welfar*e, 552 A.2d 1160, 1161-63 (Pa. Cmwlth. 1989). Those cases, however, do not hold that

_____

[2] There is no issue of incompleteness of the record or inability of this Court to view the surveillance video that was played at trial. A disc containing the video was supplied to this Court as a supplemental record pursuant to a stipulation of the parties that it contains the video played at trial. Limited Joint Stipulation ¶¶2-3. This stipulation further states that the parties agree that the video was not formally admitted into evidence at trial and that Appellant does not waive his contention that the video cannot be considered in ruling on the sufficiency of the evidence. *Id.* ¶¶3-4, 6.

a recording that was played to the finder of fact after the trial court determined that the requirements for admission were met is not in evidence simply because no formal motion was made and granted.

Here, the video was not merely marked for identification, it was played to the trial court, the finder of fact, for its consideration as evidence after the trial court confirmed that Appellant's counsel stipulated to the video's authenticity and relevance. N.T. Trial at 52-53, 58-61. Before the trial court permitted the Commonwealth to play the video, the following colloquy occurred:

> MR. ZURISKO [Commonwealth's Attorney]: Your Honor, at this time there is a stipulation to the authenticity of the contents of this disc, that it contains the events that happened at the 1313 Bar on August 12th and the 13th of 2018.
> THE COURT: Do you so stipulate, Mr. Attisano?
> MR. ATTISANO [Appellant's Counsel]: Yes, Your Honor.
> THE COURT: We'll accept that stipulation. Are you going to play that?
> MR. ZURISKO: Yes, Your Honor.

*Id.* at 52. Under these circumstances, where the trial court, in fact, made a determination that the video was admissible before it was played, the video was in evidence and became part of the record once it was played without objection, even though no formal motion to admit it in evidence was made. Although it appears that there is no Pennsylvania precedent addressing this

situation,[3] courts in other jurisdictions have recognized that when a recording is played to the fact finder for its consideration, the recording is admitted in evidence and becomes part of the record even if no formal motion is made for its admission. **Cull v. Commonwealth**, 2000 WL 311169 at \*3 (Va. App. Mar. 28, 2000) (holding that "[i]rrespective of any characterization made by the trial judge, the contents of the tape were admitted into evidence when the jury viewed it"); **Kennebrew v. State**, 480 S.E.2d 1, 4 (Ga. 1996) (defendant admitted evidence where he played tape recording even though he did not move the recording into evidence).

Moreover, Appellant is barred by waiver from contending that the video cannot be considered. Where a party does not object to the trial court's consideration of items not formally admitted into evidence despite notice that the trial court viewed the items as evidence on which it could make findings, the objection to consideration of the unadmitted items is waived. **Green v. Green**, 69 A.3d 282, 286-88 (Pa. Super. 2013). In this case, Appellant not only failed to object that the video was not admitted and failed to object to

---

[3] **Commonwealth v. Graham**, No. 1742 EDA 2018 (Pa. Super. Feb 11, 2019) (unpublished memorandum), cited by the Commonwealth, is on point and would support our conclusion that we may consider the video, but it was decided before May 2, 2019, and therefore cannot be relied upon, even for its persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 65.37(B). The other cases cited concerning video evidence that was played but not formally admitted, **Commonwealth v. Wroten**, 257 A.3d 734 (Pa. Super. 2021) and **Commonwealth v. Fretts**, 2443 EDA 2019 (Pa. Super. August 14, 2020) (unpublished memorandum), involved pretrial hearings on the sufficiency of the Commonwealth's *prima facie* case, not a trial.

the trial court's consideration of it before the trial court's verdict, he stipulated to the video's admissibility and used it in his case and in argument after the Commonwealth had rested. N.T. Trial at 52, 119-22, 155-57, 164. At no time during trial, or even in his post sentence motion, did Appellant ever contend that the video was not part of the evidence before the trial court.

Appellant did raise the issue that the video was not admitted in evidence in his Pa.R.A.P. 1925(b) statement after this appeal was filed. Appellant's Concise Statement of Errors ¶¶2, 17(I), (II). That, however, does not change the fact that the issue was waived.[4] Raising an issue for the first time in a Rule 1925(b) statement is insufficient to prevent waiver of an issue that the appellant failed to raise while the case was pending in the trial court. *Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009); *Commonwealth v. Smith*, 213 A.3d 307, 309 (Pa. Super. 2019); *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145-46 & nn.6 & 8 (Pa. Super. 2017).

Because this Court may properly consider the video, we include it the evidence that we review in evaluating Appellant's sufficiency of the evidence challenge. Our standard of review on this issue is well-settled:

_____

[4] Indeed, Appellant's failure to object at trial to the failure to formally admit the video deprived the trial court of the opportunity to cure the defect. Because this was a bench trial, the trial court could have reopened the record after the Commonwealth had rested to permit the Commonwealth to formally move the video into evidence if Appellant had raised the issue before the verdict. *Commonwealth v. Safka*, 141 A.3d 1239, 1240-41, 1249-51 (Pa. 2016).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. … Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017) (quoting

*Commonwealth v. Antidormi*, 84 A.3d 736 (Pa. Super. 2014)).

To establish the offense of third-degree murder, the Commonwealth must prove the killing of an individual with malice. *Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa. Super. 2019); *Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa. Super. 2009) (*en banc*). Appellant argues that the evidence was insufficient to prove third-degree murder on two grounds: 1) that the Commonwealth failed to prove malice and 2) that the Commonwealth failed to disprove that Appellant acted in self-defense or imperfect self-defense.

Malice includes not only particular ill will toward the victim, but also wickedness of disposition, hardness of heart, wantonness, and cruelty, recklessness of consequences, and conscious disregard by the defendant of an unjustified and extremely high risk that his actions may cause serious

bodily harm.  *Commonwealth v. Young*, 431 A.2d 230, 232 (Pa. 1981); *Commonwealth v. Patterson*, 180 A.3d 1217, 1230 (Pa. Super. 2018); *Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa. Super. 2011).

Self-defense is a complete defense to a homicide charge if 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat.  18 Pa.C.S. § 505(b)(2); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012); *Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012); *Knox*, 219 A.3d at 196.  Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent.  *Sepulveda*, 55 A.3d at 1124; *Knox*, 219 A.3d at 196; *Patterson*, 180 A.3d at 1231.  If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense.  18 Pa.C.S. § 2503(b); *Sepulveda*, 55 A.3d at 1124; *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*).

The finder of fact is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense. *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011); *Commonwealth v. Carbone*, 574 A.2d 584, 589 (Pa. 1990); *Commonwealth v. Chine*, 40 A.3d 1239, 1243 (Pa. Super. 2012). Disbelief of the defendant's testimony, however, is not sufficient to satisfy the Commonwealth's burden to disprove self-defense absent some evidence negating self-defense. *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001); *Commonwealth v. Ward*, 188 A.3d 1301, 1304 (Pa. Super. 2018).

The evidence at trial concerning the shooting and the events leading up to the shooting was as follows.

The bartender testified that Appellant was at the bar with a woman and got into an argument with another patron, that Victim and his brother then began arguing with Appellant, and that Victim approached Appellant in a threatening manner and threatened Appellant. N.T. Trial at 26-27, 34-36. The bartender testified that Appellant then walked away and started to leave the bar, but that he came back into the bar at the urging of the woman he was with, that he and Victim got into an argument, and that "the next thing I know, I heard gunshots." *Id.* at 27-28, 36-39. She testified that she saw Victim reach into his back pocket, but could not recall whether Victim approached Appellant when he came back into the bar. *Id.* at 38. She testified that the gun shots occurred immediately after she saw Victim reach

- 10 -

into his back pocket. *Id.* at 39, 41. The bartender also testified that the 1313 Bar is a dangerous bar and that everyone there carries a gun. *Id.* at 29, 32-33, 39. She testified, however, that she did not see any gun on Victim the night that he was killed and hadn't ever seen him with a gun. *Id.* at 33, 43.

Victim's brother testified that after an argument in the bar, Appellant walked out of the bar and that Victim said "oh, man, go ahead." N.T. Trial at 73-74. Victim's brother testified that Appellant then came back in and shot Victim. *Id.* at 74-75, 84. The only items found on Victim were a cell phone, a wallet, and keys. *Id.* at 104.

The woman who was with Appellant at the bar testified that Appellant was involved in an argument with a person unconnected to Victim and that Victim told Appellant to leave that person alone or "I'll beat the fuck out of you, dumbass." N.T. Trial at 117-18, 127-29, 131-32. This witness testified that Appellant then walked away, but that she spoke to him at the doorway of the bar and told him not to worry about Victim and "[j]ust let it go," and that Victim was her cousin and was probably drunk. *Id.* at 119-22. She testified that when Appellant came back into the bar, Appellant and Victim were not near each other and that Victim said to Appellant, "[Y]ou need to leave people alone. I ain't messing with you." *Id.* at 123-24, 130. This witness also testified that all of the altercations before the shooting were solely verbal and that she helped treat Victim's wounds after he was shot and saw no gun on Victim. *Id.* at 125, 128-29.

Appellant testified that at the bar on the night of the shooting, Victim threatened several times to "fuck me up." N.T. Trial at 141-42. Appellant testified that in response, he walked away and out the door of the bar, but came back into the bar because the woman with him and another person told him that the situation was resolved. *Id.* at 143. Appellant testified that when he came back in, he saw Victim "launch towards me with his hand in his pocket" and heard Victim say "[s]omething about fucking me up and that type of stuff." *Id.* at 143-44. Appellant testified that he saw Victim pull a shiny object from his pocket and that in response, he pulled out his gun and shot Victim because he was in fear for his safety. *Id.* at 144-45. Appellant did not dispute that he fired five shots at Victim and that he fired the fifth shot when Victim was on the floor, but contended that he was still in fear for his safety when he fired all of the shots. *Id.* at 145-46.

The video, which contained no audio recording, showed the following actions and events at the 1313 Bar on the night of the shooting. Appellant walked over to another patron and appeared to be talking angrily to him and then argued with Victim, who was initially seated at the bar several chairs away from Appellant. Victim stood up while he and Appellant were arguing and Appellant walked away and out of the bar. The woman who came to the bar with Appellant and another patron went to the door and talked to Appellant and he came back into the bar with them. While Appellant was leaving the bar and outside, Victim walked back and forth in the bar. As Appellant came

back into the bar, Victim was walking slowly toward the door, but was not near the door, and appeared to be shouting in the direction of the door. Victim put his left hand in the left front pocket of his pants, pulled out what appears to be a cell phone, moved it to his right hand, and put it in his right back pants pocket. Appellant then lunged forward, pushing against and reaching over the woman he was with, who was trying to restrain him, and fired a gun at Victim while Victim's hands were empty and at his side. Appellant fired the gun at Victim multiple times in rapid fire succession and did not stop shooting as Victim fell to the floor. Appellant then walked out the door of the bar.

The above evidence was clearly sufficient to show malice as it shows that Appellant intentionally fired a gun directly at Victim. Evidence that the defendant intentionally fired a gun directly at a person is sufficient to show malice. **Young**, 431 A.2d at 232; **Knox**, 219 A.3d at 195-96; **Patterson**, 180 A.3d at 1230; **Devine**, 26 A.3d at 1150. The fact that the victim had been in an altercation with the defendant before the shooting does not preclude a finding of malice. **Young**, 431 A.2d at 231-32; **Patterson**, 180 A.3d at 1222-23, 1230.

This evidence was also sufficient to disprove Appellant's self-defense and imperfect self-defense claims. From the video, the trial court could find that Appellant did not believe that Victim was threatening him with a weapon, as the video shows that the object Victim took out was a cell phone, not a weapon, and that Victim had put it away and had nothing in his hands when

Appellant began shooting. Moreover, it can be concluded from the video that Appellant was acting out of anger and not fear when he fired the gun, as Appellant was lunging toward Victim, was trying to get to Victim despite efforts to keep him away from Victim, was not ducking or taking any evasive action, and calmly walked out of the bar after the shooting.

Several other items of evidence also negate Appellant's claims of self-defense and imperfect self-defense. No weapon of any kind was found on Victim and no witness saw any weapon on Victim. N.T. Trial at 33, 43, 104, 125. The threats that the witnesses testified that Victim had made did not involve use of a firearm or other weapon that could harm Appellant from a distance and Victim was not close to Appellant when Appellant shot him. *Id.* at 117-18, 123-24, 129, 131-32, 141-44. The testimony of all of the witnesses, including Appellant himself, also showed that Appellant had been able to retreat with complete safety by leaving the bar after Victim had threatened him and that he chose to return to the bar. *Id.* at 36, 74, 84, 119, 122, 143. Proof that the defendant was able to safely retreat is sufficient to satisfy the Commonwealth's burden of disproving both self-defense and imperfect self-defense. 18 Pa.C.S. § 505(b)(2)(ii); *Truong*, 36 A.3d at 599; *Commonwealth v. Ventura*, 975 A.2d 1128, 1143-44 (Pa. Super. 2009). Moreover, there was evidence that what Victim said to Appellant when Appellant returned to the bar was non-threatening. N.T. at 130.

Because the evidence at trial was sufficient to prove malice and to disprove Appellant's claims of self-defense and imperfect self-defense, Appellant's lone claim of error in this appeal is without merit. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2021