J-A23018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL A. GRIFFIN | : | |
| | : | |
| Appellant | : | No. 590 WDA 2024 |

Appeal from the Judgment of Sentence Entered April 16, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003853-2022

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  December 22, 2025**

Michael A. Griffin appeals from the judgment of sentence entered for his convictions for firearms not to be carried without a license and knowing and intentional possession of a controlled substance.[1] Griffin challenges the court's denial of his motion to suppress. We affirm.

The Commonwealth charged Griffin with various drug offenses and carrying a firearm without a license following his encounter with Officer Patrick O'Brien in an AutoZone parking lot. Griffin filed a motion to suppress, arguing in part that he was subjected to an investigative detention without reasonable suspicion. Motion to Suppress, filed 9/20/22. The court held a hearing where the Commonwealth presented testimony from Officer O'Brien.

_____

[1] 18 Pa.C.S.A. § 6106(a)(1) and 35 P.S. § 780-113(a)(16), respectively.

Officer O'Brien testified that on April 30, 2022, he was patrolling the parking lot. N.T., Suppression Motion, 12/12/22, at 4-5. He stated that over the preceding week, there had been catalytic converter thefts in the area. *Id.* at 6. He explained the specifics of the thefts, including the method used to remove the converters, the time it takes for removal, and the typical time of day that the thefts occurred in the AutoZone parking lot. *Id.* at 5-6.

> [Commonwealth]: Real quick, like, at - - on this specific night was there something that you were concerned about, like, as to events that had been happening near the time of this specific night?
>
> [Officer O'Brien]: Within the past week - - the business of AutoZone is at the intersection of Washington and McFarland, the address of 220 Washington Road. Right on McFarland Road within the past week, week-and-a-half we've had a lot of - - we've had some catalytic converter thefts within the area. Typically these are about 10, 15 minute thefts that happen with vehicles that are parked on a road or the parking lot as well. So it was pretty close within the vicinity of AutoZone.
>
> [Commonwealth]: And about the time of night were these thefts occurring?
>
> A: Overnight hours.
>
> Q: Okay. And - - and catalytic converters, where are they located on the car, like, how would one come about getting that off of a car?
>
> A: Underneath the vehicle. Usually they have to use an electronic saw to get them off.

*Id.*

Officer O'Brien testified that at approximately 3:27 a.m. on the morning in question, he saw a vehicle in the AutoZone parking lot, backed in and near

the front entrance door. ***Id.*** at 7. He testified that when he shined his spotlight on the vehicle, he saw "a head of an individual kind of pop up" by the steering wheel. ***Id.*** Officer O'Brien said that this was "uncommon" and "the first time I've seen it there[.]" ***Id.*** He then drove out of the parking lot and radioed for backup. ***Id.*** at 8. Once backup arrived, he returned to the parking lot. ***Id.*** at 9.

Officer O'Brien said that he then approached the vehicle and spoke with the driver. ***Id.*** While speaking with her, he saw Griffin in the front passenger seat. ***Id.*** at 9-10. Officer O'Brien testified that he immediately noticed a smell of burnt marijuana coming from the vehicle. ***Id.*** at 10. Officers asked both occupants of the vehicle for their identification cards. Griffin said that he did not have his identification card, but he provided his name and date of birth. ***Id.*** at 11. Another officer on the scene conducted a check of this information and learned that Griffin had a warrant. ***Id.*** They returned to the car and asked Griffin to exit the vehicle. ***Id.*** at 12. Before getting out, Griffin reached down toward the front passenger seat, and officers directed him not to reach. ***Id.*** Officers then removed Griffin from the vehicle and arrested him. Following a search of the vehicle, officers recovered a plastic bag containing marijuana from the passenger side door. ***Id.***

Officer O'Brien testified that after Griffin had been taken into custody, he then spoke with the driver. ***Id.*** at 13. He explained that at that point, there were four or five officers at the scene and that they were not "surrounding her all at once." ***Id.*** at 13-14. Officers obtained a search warrant for the vehicle

and recovered a firearm from underneath the passenger seat. They also found four bags of marijuana and Griffin's driver's license. *Id.* at 18-19.

On cross-examination, Officer O'Brien agreed that three other officers were at the scene, each arriving in their own patrol vehicle. *Id.* at 24. When asked if the officers blocked the exits of the parking lot, Officer O'Brien replied, "Would I say they were completely blocked in? No, but there was one in the front of the vehicle as well." *Id.* at 25. Counsel then questioned Officer O'Brien about his body-worn camera video ("the video"). *See Id.* at 26-36, 39; *see* MLPD_22005092-2redacted.MP4. Officer O'Brien agreed that based on where officers parked their vehicles, it would have been "difficult" for the driver to exit the parking lot. *Id.* at 28. Officer O'Brien also testified that he did not see anyone exit the vehicle, did not see them with any tools or an electric saw, and did not observe them engaged in criminal activity. *Id.* at 29.

Next, defense counsel attempted to play the portion of another officer's body-worn camera footage that showed Griffin's arrest. *Id.* at 34. The Commonwealth objected, stating that it was not Officer O'Brien's body-worn camera footage and could not be authenticated. *Id.* Defense counsel responded that the footage was admissible because Officer O'Brien had testified that it "was a fair and accurate description of the scene at that time." *Id.* at 35. The court overruled the objection. *Id.* The defense then played the footage. *Id.* During redirect, the Commonwealth played a portion of Officer O'Brien's body-worn camera video. *Id.* at 46. Neither party moved the video or any portion of it into evidence.

The parties then presented their arguments to the court. During its argument, the Commonwealth referenced the video. *Id.* at 53. The court denied the motion to suppress, finding that the encounter was "an appropriate investigatory detention[.]" *Id.* at 59.

Griffin filed a motion to reconsider the order denying suppression. He also filed a Motion for Findings of Fact and Conclusions of Law in Accordance with Pa.R.Crim.P. 581(1). The court denied both motions.

Griffin proceeded with a non-jury trial, and the court found him guilty of firearms not to be carried without a license and knowing and intentional possession of a controlled substance. *See* N.T., Stipulated Non-Jury Trial, 12/13/23, at 20. The court imposed a sentence of concurrent terms of three years' reporting probation for the firearms conviction and six months' reporting probation for the drug conviction. This timely appeal followed. *See* Notice of Appeal, filed 5/15/24.

More than one year after Griffin appealed, the Commonwealth filed a motion in the trial court to supplement the record with the video. *See* Motion to Supplement Certified Record on Appeal, filed 7/3/25. The trial court granted the motion and issued an order stating that "the video was considered by the trial court in making its determination during the suppression hearing." Order of Court, filed 7/8/25.

On appeal, Griffin raises the following question:

I.      Whether the trial court erred in denying Mr. Griffin's motion to suppress, where the police unlawfully

> detained him without sufficient reasonable suspicion
> of criminal activity?

Griffin's Br. at 7.[2]

Our standard of review for the denial of a motion to suppress is settled:

> [O]ur standard of review for the denial of a suppression motion is *de novo* and is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Our scope of review is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole. When the sole issue on appeal relates to a suppression ruling, our review includes only the suppression hearing record and excludes from consideration evidence elicited at trial.

**Commonwealth v. Ochoa**, 304 A.3d 390, 396 (Pa.Super. 2023) (citation omitted).

Griffin maintains that this Court should not consider the video since it was not admitted into evidence at suppression hearing. He states that this Court's decision in **Commonwealth v. Snowden**, 330 A.3d 422 (Pa.Super. 2025) (*en banc*), supports his claim that the video should not be considered on appeal. For its part, the Commonwealth maintains that the video is within our scope of review since the parties referenced and relied on it during the motion.

_____

[2] Griffin also argues that the court erred in failing to place its findings and conclusions on the record. We find this claim waived for failure to raise it in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii); Concise Statement of Errors Complained of on Appeal, filed 9/12/24, at 4 (unpaginated).

We first address whether the video is within the scope of our review. "[E]xhibits that are merely marked for identification and submitted by the offering party do not constitute evidence on which a finder of fact can rely." *Commonwealth v. Jones*, 271 A.3d 452, 456 (Pa.Super. 2021). However, when a party fails to object to the court's "consideration of items not formally admitted into evidence despite notice that the trial court viewed the items as evidence on which it could make findings," an objection to consideration of the evidence is waived. *Id.* at 457.

Although Griffin argues that *Snowden* suggests that the video may not be considered, we find it inapposite. There, at a suppression hearing, Snowden questioned an officer on portions of body-worn camera footage. *See Snowden*, 330 A.3d at 426. The Commonwealth then asked the officer one question about the video. *See Id.* Notably, neither party moved for the admission of the video. During argument, the Commonwealth argued that the video was not evidence since it was not admitted. *See Id.* The trial court denied the motion to suppress and following a non-jury trial, found Snowden guilty of possession of a controlled substance. *See id.*

On appeal, Snowden argued that the court had erred in denying the suppression motion. Before addressing the merits of his claim, this Court considered whether the video was within our scope of review. In coming to the determination that it was, we were guided by *Jones*. In that case, during the trial, the Commonwealth played video surveillance footage and Jones stipulated to the authenticity of the video. He did not object to the video being

- 7 -

played and cross-examined the witness about the video. Neither party moved for admission of the video. However, "the trial court, the Commonwealth, and [Jones] all treated the video as admitted evidence after the Commonwealth rested." **Jones**, 271 A.3d at 455. The court found Jones guilty of third-degree murder and firearms crimes.

Jones appealed, challenging the sufficiency of the evidence. He also argued that this Court could not consider the surveillance video because it had not been admitted into evidence. We rejected Jones' claim and concluded that:

> where the trial court, in fact, made a determination that the video was admissible before it was played, the video was in evidence and became part of the record once it was played without objection, even though no formal motion to admit it in evidence was made.

**Id.** at 456. We also concluded that there was ample support in the record that Jones waived any claim that the video could not be considered, including his failure to object to the court's consideration of the video and failing to argue that the video was not part of the evidence. **See id.** at 456-57.

Turning back to the facts of **Snowden**, we concluded that "unlike **Jones**, the trial court did not determine that the video was admissible before it was played, and there was no stipulation that the video was authentic or admissible." **Snowden**, 330 A.3d at 430. As such, we determined that the video was not within our scope of review. We also observed that the trial court explicitly noted that the video was not admitted into evidence. **See id.** at 431 (citing **Commonwealth v. Wroten**, 257 A.3d 734, 740-41 (Pa.Super. 2021) (concluding that surveillance video and preliminary hearing notes of testimony

- 8 -

were within this Court's scope of review, where defense counsel "explicitly relied upon" exhibits and the record showed that the court "accepted these items into evidence and considered them to be part of the record for the purpose of its analysis")).

Here, although neither party offered the video into evidence, both parties referenced the video either during the examination of Officer O'Brien or in argument to the court. Additionally, Griffin did not object to the court's consideration of the video. Nor did he argue that the video was not properly admitted into evidence. Furthermore, the record shows the trial court considered the video as part of its findings. *See* Order of Court, filed 7/8/25. As such, we conclude that the video is within the scope of our review, and Griffin waived any claim that the video should not be considered. *See Jones*, 271 A.3d at 457; *Wroten*, 257 A.3d at 740-41; *but cf. Commonwealth v. Brown*, No. 1752 EDA 2024, 2025 WL 2546616 at *4 (Pa.Super. filed September 4, 2025) (unpublished mem.) (concluding that an affidavit of service was outside of our scope of review where Commonwealth did not move it into evidence and appellant objected to its admissibility at trial).

We now address the merits of Griffin's appellate issue. Griffin argues that the trial court erred in denying his motion to suppress. He notes that the trial court agreed that the police interaction with Griffin amounted to an investigative detention, but Griffin claims the court erred by finding that the detention was supported by reasonable suspicion. He states that Officer O'Brien testified that four officers arrived at the scene, in four separate

vehicles, and two of those vehicles were used to block the exits of the parking lot. Griffin claims, "no reasonable person in [his] shoes would have felt free to ignore the four police officers surrounding the vehicle with a spotlight shined on them[.]" Griffin's Br. at 26. He argues that his freedom of movement was restrained by the officers, and "there was no opportunity for a mere encounter to occur" since the interaction began as an investigative detention. *Id.* Griffin argues that the Commonwealth failed to establish reasonable suspicion because Officer O'Brien's testimony did not link his prior experience of thefts in that area with anything related to Griffin, such as observing Griffin in possession of tools used to steal catalytic converters. *See id.* at 29.

For its part, the Commonwealth claims the facts show that the encounter between Griffin and the police began as a mere encounter and transitioned to an investigatory detention. It argues that although the circumstances surrounding Officer O'Brien's reasons for initially approaching the vehicle could give rise to reasonable suspicion, the interaction amounted to a mere encounter. It further maintains that Officer O'Brien's subsequent detection of the smell of burnt marijuana gave rise to reasonable suspicion that criminal activity was afoot.

Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution "guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019). To give effect to this right, the law requires

"officers to demonstrate ascending level of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Id.* (citation omitted).

"Because interactions between law enforcement and the general citizenry are widely varied, search and seizure law looks at how the interaction is classified and if a detention has occurred." *Id.* When police encounter an individual, the interaction may be classified as a mere encounter, an investigative detention, or a custodial interrogation. *See Commonwealth v. Ward*, 318 A.3d 410, 414 (Pa.Super. 2024). A mere encounter occurs when there is "no official compulsion to stop or to respond," and does not require a particular level of suspicion. *Commonwealth v. Thomas*, 273 A.3d 1190, 1196 (Pa.Super. 2022) (citation omitted). "It generally involves a request for information and requires no particular suspicion of criminality because it carries 'no official compulsion to stop or to respond.'" *Commonwealth v. Hicks*, 208 A.3d 916, 927 (Pa. 2019) (citation omitted).

However, an investigative detention "must be supported by a reasonable suspicion" that criminal activity is afoot. *Thomas*, 273 A.3d at 1196 (citation omitted). "The reasonable suspicion standard allows a police officer to stop an individual based upon specific and articulable facts and rational inferences from those facts that warrant a belief that the individual is involved in criminal activity." *Commonwealth v. Brame*, 239 A.3d 1119, 1128 (Pa.Super. 2020) (cleaned up). The sufficiency of the facts articulated by the officer to support reasonable suspicion "must be evaluated under the

totality of the circumstances." *Id.* The court should consider the following non-exhaustive list of circumstances when deciding whether a reasonable person would feel free to leave:

> [T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Beasley*, 761 A.2d 621, 624-25 (Pa.Super. 2000) (citation omitted).

In the instant case, the trial court has suggested that both an investigative detention and a mere encounter occurred. At the suppression hearing, the court stated that Griffin's encounter with police was "an appropriate investigatory detention[.]" N.T., Suppression Hearing, at 59. However, in its Pa.R.A.P. 1925(a) opinion, the court states "[a]rguably, the initial interaction between Officer O'Brien and [Griffin] was a mere encounter." Rule 1925(a) Opinion ("1925(a) Op.), filed 12/22/24, at 6. It concludes that once he smelled burnt marijuana, Officer O'Brien "determined that criminal activity was afoot." *Id.* The court found that "Officer O'Brien's reliance on that odor to conduct an investigatory detention in this case was proper." *Id.* at 6-7.

To determine what level of interaction occurred, we are guided by our Supreme Court's decision in *Commonwealth v. Au*, 42 A.3d 1002 (Pa.

2012). There, police initially encountered Au in a vehicle parked in a lot. ***See Au***, 42 A.3d at 1003. The officer testified that it was early in the morning and that it was unusual to see a vehicle in the lot at that time. ***See id.*** The officer drove to the vehicle and parked his car at an angle "to illuminate the passenger side." ***Id.*** Upon approaching, he observed six people in the car, with Au seated in the front passenger seat. ***Id.*** at 1003-04. He testified that he "probably" used a flashlight and all the individuals in the car looked "very young." ***Id.*** at 1003. He asked if everyone was 18 years old, and some individuals in the back of the car responded no. ***Id.*** At that point, he asked Au for his identification. ***Id.*** Au opened the glove box, and the officer saw two baggies of marijuana. ***Id.*** at 1004. The officer arrested Au for possession of a small amount of marijuana. ***Id.*** at 1003. Au filed a motion to suppress, which the trial court granted, finding that the encounter with Au amounted to an investigative detention unsupported by reasonable suspicion. ***Id.*** at 1004.

The Commonwealth appealed and this Court affirmed. The Court concluded that the officer's encounter with the occupants of the vehicle "ripened into an investigative detention" when the officer asked the identification from the occupants. ***Id.*** at 1005 (quoting ***Commonwealth v. Au***, 986 A.2d 864, 867 (Pa.Super. 2009) (*en banc*)). Our Supreme Court disagreed. It concluded the officer's request for identification amounted to a mere encounter rather than an investigative detention. ***See id.*** at 1009 ("the arresting officer's request for identification did not transform his encounter with [Au] into an unconstitutional investigatory detention").

In coming to this conclusion, the Court noted testimony about the officer's use of lights and the position of his vehicle during the interaction and found that these factors did not raise the interaction to an investigative detention.

> In the present case, the arresting officer's unrebutted testimony indicates that he did not: activate the emergency lights on his vehicle, . . .; position his vehicle so as to block the car that [Au] was seated in from exiting the parking lot, . . . ; brandish his weapon; make an intimidating movement or overwhelming show of force, . . . make a threat or a command; or speak in an authoritative tone. In terms of the use of the arresting officer's headlights and flashlight, this was in furtherance of the officer's safety, and we conclude it was within the ambit of acceptable, non-escalatory factors.

*Id.* at 1008 (citations and footnote omitted).

In the present case, police encountered Griffin early in the morning in a vehicle parked in a parking lot known for thefts. The video evidence shows that there was only one other officer present when Officer O'Brien approached the vehicle. Additionally, Officer O'Brien did not park his patrol car directly in front of or next to the vehicle. Rather, he positioned his patrol car at an angle to the right of the vehicle with the spotlight pointing in the vehicle's direction. The additional officer on the scene positioned his patrol car similarly at an angle to the left of the vehicle. Both patrol cars were near the exits of the parking lot, and both were at least one patrol car length away from the vehicle. Almost two minutes after Officer O'Brien approached the vehicle, two additional officers arrived on the scene, each in a separate vehicle. Ultimately,

a total of five officers were present, standing at a distance from the vehicle at various times and at no point did the officers activate their emergency lights.

Consistent with **Au**, we conclude that Griffin's initial interaction with police amounted to a mere encounter. Although Griffin maintains that the interaction began as an investigative detention because he was surrounded by four police officers, the video belies this claim. Griffin initially only encountered two officers, who arrived in separate patrol vehicles at different times. Neither officer's emergency lights were activated, and there is no evidence that any officer brandished a weapon or made an intimidating movement or overwhelming show of force towards Griffin. Although the officers during this initial encounter asked for identification, neither this fact nor the position of the patrol cars or the use of a spotlight transformed the initial encounter into an investigative detention. **Au**, 42 A.3d at 1009; **but see Commonwealth v. Livingstone**, 174 A.3d 609, 619 (Pa. 2017) (concluding appellant's interaction with state trooper amounted to an investigative detention when the trooper "pulled alongside her vehicle, with his emergency lights activated"). The trial court therefore did not err in denying the motion to suppress. **See Commonwealth v. Lehman**, 275 A.3d 513, 520 n. 5 (Pa.Super. 2022) (stating an appellate court may affirm a lower court's decision on any ground).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  12/22/2025