J-A21023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                       :             PENNSYLVANIA
                       :
          v.                    :
                       :
                       :
GREGORY ARTWELL             :
                       :
           Appellant           :       No. 3077 EDA 2023

Appeal from the Judgment of Sentence Entered October 9, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003593-2021

BEFORE: KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:           **FILED OCTOBER 31, 2024**

Appellant Gregory Artwell appeals from the judgment of sentence imposed following his conviction for conspiracy to commit third-degree murder.[1] Appellant challenges the sufficiency of the evidence and argues that conspiracy to commit third-degree murder is not a cognizable offense. We affirm.

The trial court summarized the underlying facts of this matter as follows:

Police responded to 2035 Edgmont Avenue about 8:45 p.m. on January 26, 2020, and found Keenan Mason shot on the street. The Police located four shell casings near Mason, who was still alive. An ambulance arrived within minutes and transported Mason to Crozer-Chester Medical Center, where he succumbed to his injuries on January 28. Deputy Chief Medical Examiner Dr. Bennett Preston testified Mason suffered a single gunshot wound to the head. The bullet had destroyed Mason's brain matter. The

---

[1] 18 Pa.C.S. §§ 903(a), 2502(c).

bullet entered the left side of the skull and exited the right, becoming stuck in the skin above Mason's right ear.

The victim's brother, Kareem Mason, testified [that Appellant's co-conspirator, Rashee] Hunter had come to their apartment above the Deli Market about a week or so before the shooting to bag up cocaine for distribution. Kareem Mason noticed Hunter had a gun on him and told Keenan Mason about it. Keenan Mason had recently had a firearm taken from him. Hunter allowed Keenan Mason to handle the weapon and Kareem Mason said his brother smirked while doing so. He said he had a bad feeling that something might happen, but Keenan Mason handed the gun back without incident. The following day, Kareem Mason said he was awakened by the sound of a scuffle on the back steps and saw Keenan Mason with two other men robbing Hunter of the firearm at gunpoint. Kareem Mason worried the robbery of the gun could start something because Hunter was from the "west side" of the city.

Delaware County Detective Timothy Deery narrated extensive video surveillance taken in the area on the night of the shooting. He noted [Appellant] could be seen walking on Edgmont Avenue and talking on a cellphone shortly before the shooting took place. Deery identified Hunter as the shooter in the video. Deery testified Hunter was wearing an oversized tan winter coat with a furred hood as seen in the video. The video recorded the shooter coming around the corner on 21st Street, firing, and then proceeding northbound on Edgmont Avenue. Kyree Washington, one of the people who had allegedly helped rob Hunter, is then seen on the video retrieving a handgun from [Keenan] Mason before the police arrive.

Deery obtained phone records for [Appellant] and Hunter. Those records showed the two were in contact for about six and a half minutes directly before the shooting. The Commonwealth alleged [Appellant] appeared in the video to be searching on Edgmont for the victim prior to the shooting. [Appellant] was alleged to have notified Hunter when [Keenan] Mason exited his apartment, allowing the gunman to move in at the right time.

Federal Bureau of Investigation Special Agent William Shute testified data from both phones showed they were hitting towers in the area of the shooting at the same time. Additional information taken from Hunter's phone showed he had visited a website featuring a coat like the one worn by the shooter on Dec.

19, 2019. The phone data also established that 17 calls between [Appellant] and Hunter on the day of the shooting had been manually deleted from Hunter's phone call logs. Hunter had also visited several news sites reporting the shooting multiple times between Jan. 27 and Feb. 16, 2020, and googled "Rashee Hunter suspect."

A recording of prior testimony from a person who was with Hunter that day was also played at trial. That witness said Hunter had left for about 20 minutes at the time of the shooting, wearing a coat similar to the person in the video. Hunter told the witness to mind their business about where he [was] going. News of the shooting had broken on social media during Hunter's absence. When Hunter returned, he allegedly told the witness, "That's what happens when mother . . . go around robbing people." The witness said they were aware of the gun being taken from Hunter about a week before [Keenan] Mason was killed.

Trial Ct. Op., 1/22/24, at 1-4.

Ultimately, after a jury convicted Appellant of conspiracy to commit third-degree murder, the trial court sentenced him to a term of eleven to twenty-two years' incarceration.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

1. The evidence presented at trial by the Commonwealth was insufficient to establish that [Appellant] is guilty of the crime of conspiracy to commit third-degree murder and the case should be remanded back to the court of Common Pleas of Delaware County with instructions to enter a finding of not guilty and to discharge the [Appellant].

2. The verdict of guilty to conspiracy to commit third-degree murder in this case should be reversed on the ground that the crime of conspiracy to commit third-degree murder is not a cognizable offense and the case should be remanded to the

> Court of Common Pleas with instructions to dismiss the [Appellant] in the event that at some point in the future the Pennsylvania Supreme court so holds.

Appellant's Brief at 30, 45 (formatting altered).[2]

In his first claim, Appellant challenges the sufficiency of the evidence supporting his conviction for conspiracy to commit third-degree murder. *Id.* at 30. In support, Appellant argues that although there were cell phone records indicating that he communicated with his co-conspirator, the Commonwealth failed to present any evidence concerning "the actual content of the conversations" and that "[t]he [j]ury was forced to speculate on the substance of the calls as to the mention of killing Mr. Mason versus other matters[.]" *Id.* at 33-34. Specifically, Appellant also claims that there was no evidence of a meeting between Appellant and his co-conspirator prior to the shooting, that Appellant "was informed that [his co-conspirator] had a gun" before the shooting, that his co-conspirator had decided to shoot Mr. Mason until moments before the shooting occurred, or that Appellant and his co-conspirator had any contact after the shooting to indicate "successful completion of the alleged conspiracy." *Id.* at 34-35. Additionally, Appellant

---

[2] We note that Appellant does not include a statement of questions in his brief. Therefore, we could find Appellant's claims waived on this basis. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). However, because Appellant's sufficiency claim is clear, and the trial court addressed this issue in its Rule 1925(a) opinion, we decline to find waiver. *See Commonwealth v. Adams*, 882 A.2d 496, 498 (Pa. Super. 2005) (addressing the appellant's claim although his appellate brief did not include a statement of questions involved, statement of scope and standard of review, statement of the case, or a summary of the argument).

argues that there was evidence suggesting his lack of involvement in the shooting because one of the witnesses did not mention Appellant during her testimony about what Appellant's co-conspirator told her after the shooting occurred. *Id.* at 36. Finally, Appellant argues that "the fact that [he] erased the phone calls from his phone for the date of Mr. Mason's murder," could be "evidence of guilty knowledge," it may have been to avoid providing evidence against Mr. Hunter, who was Appellant's friend at that time. *Id.* Therefore, Appellant concludes that there was insufficient evidence supporting his conviction for conspiracy.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

The Crimes Code defines conspiracy as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a) (formatting altered).

Additionally, third-degree murder is defined as "all other kinds of murder" other than first-degree or second-degree murder. 18 Pa.C.S. § 2502(c). In effect, to convict a defendant of third-degree murder, the Commonwealth must prove "the killing of an individual with malice." *Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa. Super. 2021) (citations omitted). Malice is defined as "exhibiting an 'extreme indifference to human life.'" *Commonwealth v. Ludwig*, 874 A.2d 623, 632 (Pa. 2005) (citation and emphasis omitted). Malice includes "not only particular ill will toward the victim, but also wickedness of disposition, hardness of heart, wantonness, and cruelty, recklessness of consequences, and conscious disregard by the defendant of an unjustified and extremely high risk that his actions may cause serious bodily harm." *Jones*, 271 A.3d at 458 (citations omitted). The mental state of malice thus exceeds that of "ordinary recklessness." *Commonwealth v. Packer*, 168 A.3d 161, 169 (Pa. 2017). Therefore, third-degree murder "is a homicide that the Commonwealth must prove was

- 6 -

committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill." **Commonwealth v. Fisher**, 80 A.3d 1186, 1191 (Pa. 2013) (citations omitted).

Here, the trial court addressed Appellant's sufficiency claim as follows:

[T]he evidence supports a finding that [Appellant] and Hunter agreed to engage in the intentional and malicious hunting and gunning down of the victim. Generally, an agreement is established by circumstantial evidence such as the relations, conduct, or circumstances of the parties, or overt acts by co-conspirators. **Commonwealth v. Johnson**, 985 A.2d 915, 920 (Pa. 2009). Both men are seen in the video. [Appellant] was walking the streets on his cell phone and Hunter doing the shooting. The cell phone records indicate both men were in contact with each other for six plus minutes immediately prior to the shooting. The evidence also established that Hunter was able to confront the victim the moment the victim was entering the deli even though Hunter was unable to see the front of the deli or the victim from the direction Hunter approached. The evidence depicting the co-conspirators' relentless hunt of the victim established that [Appellant] acted with the requisite malice for conspiracy to commit third-degree murder. Obviously, the jury concluded [that Appellant] and Hunter's actions resulted in the victim's death. [Appellant's] conviction of conspiracy to commit third-degree murder was appropriate.

Trial Ct. Op. at 7-8 (formatting altered).

Following our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find no error in the trial court's conclusions. **See Palmer**, 192 A.3d at 89. As noted by the trial court, the Commonwealth presented evidence establishing that Appellant and his co-conspirator agreed to engage in "hunting and gunning down the

victim," which ultimately resulted in the victim's death. **See** Trial Ct. Op. at 8. Therefore, we agree with the trial court that there was sufficient evidence to sustain Appellant's conviction for conspiracy to commit third-degree murder. Accordingly, he is not entitled to relief.

In his remaining claim, Appellant argues that his conviction should be deemed a legal nullity based on the dissenting opinion in **Fisher**, which stated that the crime of conspiracy to commit third-degree murder is not a cognizable offense. Appellant's Brief at 45-46. However, our Supreme Court reached the opposite conclusion in its majority opinion and we remain bound by existing precedent. **See Fisher**, 80 A.3d at 1195-96; **see also Commonwealth v. Reed**, 107 A.3d 137, 143 (Pa. Super. 2014) (stating that we are bound by existing precedent until such time it is overturned). Therefore, Appellant is not entitled to relief on this claim.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/31/2024