J-S04012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EMMANUEL WHITE | : | |
| | : | |
| Appellant | : | No. 872 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002893-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EMMANUEL WHITE | : | |
| | : | |
| Appellant | : | No. 873 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002894-2020

BEFORE:  BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 16, 2024**

Emmanuel White appeals from the aggregate judgments of sentence of five to ten years of incarceration following his convictions for theft, voluntary manslaughter, recklessly endangering another person, carrying a firearm without a license, and carrying a firearm in public in Philadelphia.  We affirm.

The two cases stem from an argument that erupted between Appellant and his girlfriend, Naadirah Wise. Although the underlying disagreement had been simmering for several days, it "escalated into a physical confrontation" on June 8, 2020. Trial Court Opinion, 6/16/23, at 3 (cleaned up). The trial court summarized the ensuing incident as follows:

> During the physical confrontation, Ms. Wise pushed [Appellant], punched him in the face, and stabbed him multiple times with a pair of scissors and [Appellant] spat at Ms. Wise, punched her in the head, took her phone, and put his hands around her neck.
>
> At some point during the fighting, Ms. Wise called her father, the decedent Richard Pryor, and asked him to come to her house because [Appellant] had hit her. Mr. Pryor arrived shortly thereafter with his girlfriend Kyesha Majett. Ms. Wise opened the door for her father and Ms. Majett as [Appellant] came down the stairs and headed into the living room. [Appellant] and the decedent exchanged words before [Appellant] reached for a gun located under the couch in the living room. [Appellant] then shot the decedent four times including once in the head and three times in the chest. [Appellant] ran out of the house with the gun and Ms. Wise's cellphone.

*Id*. at 3 (cleaned up). Appellant fled the scene in his car after discarding the firearm. Despite Ms. Wise and a neighbor administering life-saving efforts, Mr. Pryor was pronounced dead upon his arrival at the hospital.

Based on the foregoing, Appellant was charged with various offenses at the listed dockets. He proceeded to a joint jury trial, during which he testified that he had been acting in self-defense. Additionally, Appellant presented two character witnesses who testified to his reputation for being an honest, peaceful, and law-abiding person. After hearing all the evidence, the jury acquitted him of first-degree murder, third-degree murder, strangulation, and

simple assault, yet otherwise found him guilty as indicated hereinabove. The trial court sentenced him on December 2, 2022, and thereafter denied his post-sentence motion. These timely appeals followed, which we consolidated *sua sponte*. Appellant filed a Pa.R.A.P. 1925(b) statement as directed, and the court issued a Rule 1925(a) opinion. Appellant raises two issues for our consideration:

> I. Was the evidence sufficient to support Appellant's conviction for voluntary manslaughter where the Commonwealth failed to prove beyond a reasonable doubt that Appellant did not justifiably act in self-defense?
>
> II. Were the verdicts against the clear weight of the evidence where the Commonwealth failed to disprove that Appellant acted in self-defense, and where the only eyewitness to the incident made contradictory statements about what transpired and Appellant's testimony was corroborated by photographic evidence?

Appellant's brief at 4.

We begin with Appellant's sufficiency challenge, which is governed by our well-settled standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Finally, the finder of fact while passing upon the credibility of witnesses and the weight

of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Jones***, 271 A.3d 452, 457–58 (Pa.Super. 2021) (cleaned up).

Here, Appellant was charged generally with homicide, and the Commonwealth proceeded at trial upon the theories of first-degree murder and third-degree murder. In response, Appellant asserted that he had been acting in self-defense. We have explained:

Self-defense is a complete defense to a homicide charge if 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent.

***Commonwealth v. Green***, 273 A.3d 1080, 1084–85 (Pa.Super. 2022) (cleaned up). Further,

[i]f the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense.

***Jones***, 271 A.3d at 458 (citations omitted).

At the conclusion of Appellant's trial, the jury was instructed, *inter alia*, on first-degree murder and third-degree murder, as well as voluntary manslaughter based upon imperfect self-defense. ***See*** N.T. Trial, 9/22/22, at

- 4 -

25-43. As noted, the jury found him not guilty of either type of murder, but guilty of voluntary manslaughter.

In his sufficiency argument before this Court, Appellant maintains that he acted in self-defense because he only shot Mr. Pryor after Mr. Pryor burst into his home, stabbed him, and tried to take control of the firearm. ***See*** Appellant's brief at 11. Thus, Appellant contends "that the evidence did not support his voluntary manslaughter conviction because the Commonwealth failed to establish beyond a reasonable doubt that he did not reasonably and justifiably act in self-defense during the confrontation." ***Id***.

On direct examination, Ms. Wise attested that Appellant retrieved the firearm from the couch as she was opening the front door for her father. ***See*** N.T. Trial, 9/20/22, at 136. Mr. Pryor then entered the apartment and, noticing that Appellant was holding a firearm down by his side, stated that "a man doesn't put a gun in his hand if he's not going to use it[.]" ***Id***. at 138, 145. Then, pointing to Ms. Wise's face, Mr. Pryor explained that he would die to protect her. ***Id***. Appellant responded, "Go ahead, Rick." ***Id***. at 138, 144. Ms. Wise, Ms. Majett, and Mr. Pryor all told Appellant to put down the firearm, and Mr. Pryor had his hands in the air in front of him with his palms open. However, about "two seconds after that[,] shots went off . . . and [Mr. Pryor] fell to the couch. And [Appellant] left the house with the gun[.]" ***Id***. at 138-39, 144, 204. According to Ms. Wise, Appellant shot her father in quick succession from a distance of approximately four feet. ***Id***. at 146, 153.

We find supported by the record the jury's determination that Appellant unreasonably believed he was in immediate danger of deadly force. Therefore, we conclude that the Commonwealth presented sufficient evidence to convict Appellant of voluntary manslaughter based upon imperfect self-defense, and he is not entitled to relief on his sufficiency challenge.

Appellant next argues that the verdict was against the weight of the evidence. Appellate courts review weight claims for an abuse of discretion by the trial court. *See Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011). Thus, we do "not answer for [ourselves] whether the verdict was against the weight of the evidence." *Id*. (citation omitted). Instead, our "review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Id*. at 1136 (cleaned up). A trial court will grant "a new trial based on a weight of the evidence claim . . . only . . . where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Id*. (citation omitted).

Again, Appellant avers that the Commonwealth failed to disprove self-defense. *See* Appellant's brief at 17. Particularly, he contends that prior inconsistent statements rendered Ms. Wise's trial testimony incredible, and other evidence supported Appellant's assertion that Mr. Pryor had stabbed him immediately before the shooting. *Id*. at 17-18.

By way of further background, Ms. Wise testified in detail that Appellant "already had the weapon in his hand" when her "dad stepped in" to the

apartment, and "[e]verything w[as] happening really fast." *See* N.T. Jury Trial, 9/20/22, at 138, 154-55. She clarified on cross-examination that because her father walks with a limp, he took "[a] single step" and was "not limping towards" Appellant but rather took a step "more so keeping his balance." *Id*. at 184-85; *id*. at 143 (explaining origin of limp on direct examination).

When Appellant was arrested nine days after the shooting, officers took photographs of his various injuries. *Id*. at 209-14 (discussing Commonwealth exhibit 44). Of note, due to the close cropping of the photographs, it is unclear which shoulder is depicted in the photographs of his shoulder injuries. Additionally, there was some confusion about which shoulder had a tattoo, as Ms. Wise testified that it was Appellant's right shoulder, but counsel agreed that it was his left based upon the biographical information collected by police at the time of his arrest. *See* N.T. Jury Trial, 9/20/22, at 200-01, 215-16.

Appellant testified that during the initial confrontation with Ms. Wise, she was the aggressor and he only attempted to restrain her as she stabbed him with scissors and bit him. *See* N.T. Jury Trial, 9/21/22, at 68-73. During a pause, Ms. Wise called her father to "come get him" because "he put his effing hands on me" and Appellant called his brother to help him pack and leave. *Id*. at 73, 75. The fight resumed with Ms. Wise throwing her phone at Appellant and then grabbing the scissors again to stab him "a lot." *Id*. at 74-75. As she was stabbing him, there was a knock at the front door. Appellant

tried to stop her, but she escaped his grasp and unlocked the front door. *Id*. at 76-78.

Mr. Pryor, whom Appellant said did not have a limp, "burst right in" once Ms. Wise unlocked the front door and he told Appellant, "Now you got an effing problem with me." N.T. Jury Trial, 9/21/22, at 78-79, 85. Ms. Wise told Mr. Pryor that there was a firearm under the couch. *Id*. at 79-82. In response, Appellant bent down to retrieve the firearm and Mr. Pryor stabbed him in the left shoulder. *Id*. at 83. According to Appellant, he meant to indicate to Mr. Pryor that he should leave him alone by saying "Go ahead, Rick." *Id*. at 173. Appellant attempted to back away, but Mr. Pryor continued to walk towards Appellant and when he was not looking, "lunged toward" him to "attempt to go grab the gun." *Id*. at 83-84. At that point, Appellant shot Mr. Pryor "because [he] feared for [his] life." *Id*. at 84. He then fled the apartment, tossed the firearm into the grass near an abandoned house, and drove away in his car. *Id*. at 86-87.

As to her testimony regarding Appellant's stab wounds, Ms. Wise stated on direct examination that she stabbed Appellant twice, once in the left shoulder and once in the leg. *See* N.T. Jury Trial, 9/20/22, at 128, 159-60. On cross examination, she agreed with counsel that she stabbed Appellant in the leg and in the right shoulder, and that she did not know how Appellant received a stab wound to the left shoulder, but it was not from Mr. Pryor because he did not have a weapon and there was no physical contact between him and Appellant. *Id*. at 181-82, 185. On redirect, she maintained that she

only remembered stabbing Appellant twice, but acknowledged that it was possible she stabbed him more than that. *Id*. at 197.

Also during her cross examination, Ms. Wise was confronted with prior statements she made during her initial police interview. Specifically, she had recalled to police that she "didn't know that [Mr. Pryor] was trying to rush over to grab [the firearm] and then shots just went off." *Id*. at 188. Then, in two phone calls that were recorded while she waited in the interview room, she stated: (1) "They was arguing, like tussling with the gun, and then he step back and shot my dad[;]" and (2) "My dad was trying to grab the gun from him and he stepped back and shot him three times." *Id*. at 190, 192. Ms. Wise admitted to making these statements but was adamant that Mr. Pryor did not step towards Appellant, did not stab him, and no physical altercation over the firearm occurred. *Id*. at 188, 190, 192-94, 204-05.

In ruling on Appellant's weight claim, the trial court noted that the jury was free to assess the credibility of the witnesses presented, and clearly chose to believe Ms. Wise over Appellant and his character witnesses. Determining that "the evidence fully supported the verdict," the court concluded that Appellant's "conviction was not against the weight of the evidence." Trial Court Opinion, 6/16/23, at 8. As the court aptly noted, the jury was tasked with resolving any inconsistencies between Ms. Wise's testimony and statements she made during the investigation, and it was well within its province to disregard the statements she made in the aftermath of the shooting in favor of her clear, consistent testimony at trial that Mr. Pryor

neither attempted to take the firearm from Appellant nor stabbed him. Since the testimony of both Appellant and Ms. Wise was that she inflicted multiple wounds on Appellant with a pair of scissors during the inciting altercation, the jury was permitted to infer that the stab wound to his left shoulder was inflicted during that incident instead of from Mr. Pryor. Based on the foregoing, we discern no abuse of discretion on the trial court's decision to deny Appellant's motion for a new trial.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/16/2024