J-A17027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD WILLIAM REESE | : | |
| | : | |
| Appellant | : | No. 1505 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0000594-2023

BEFORE:    McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: August 27, 2025**

Donald William Reese ("Reese") appeals from the judgment of sentence imposed following his guilty plea to statutory sexual assault[1] and the trial court's determination that he is a sexually violent predator ("SVP") under the Sexual Offender Registration and Notification Act ("SORNA").[2]  We affirm.

The Commonwealth alleged that when Reese was twenty-five years old, he "engage[d] in sexual intercourse with [a fifteen] year old juvenile, [who was] was not his spouse."  N.T., 11/29/23, at 3.  On November 29, 2023, Reese entered a negotiated guilty plea to statutory sexual assault, a Tier II

---

[1] *See* 18 Pa.C.S.A. § 3122.1(a)(2).

[2] *See* 42 Pa.C.S.A. §§ 9799.10 to 9799.95.

offense under SORNA, which triggered a twenty-five-year registration period.[3] This conviction also required the trial court to order the Sexual Offender Assessment Board ("SOAB") to evaluate Johnson for classification as an SVP.[4]

On August 8, 2024, the trial court conducted a combined SVP and sentencing hearing ("SVP hearing"). The court imposed the negotiated sentence: imprisonment of twelve months less one day to twenty-four months less two days; and a consecutive twelve months' probation.[5]

The Commonwealth called Julia Lindemuth ("Lindemuth"), a member of the SOAB who conducted an SVP assessment of Reese, as an expert in the assessment and treatment of sexual abusers. Lindemuth testified that Reese did not agree to an interview. Nevertheless, Lindemuth reviewed "a few hundred pages of records in total" pertaining to Reese. N.T., 8/8/24, at 12.

Lindemuth further testified to all of the following. There are "two pathways to lifetime reoffending:" sexual deviance; and chronic antisociality,

---

[3] **See** 42 Pa.C.S.A. §§ 9799.14(c)(1.1) (classifying statutory sexual assault as a Tier II sexual offense), 9799.15(a)(2) (requiring an individual convicted of a Tier II sexual offense to register for twenty-five years). At the same proceeding, Reese also pleaded guilty, at two different trial dockets, to disorderly conduct and possession of drug paraphernalia.

[4] **See** 42 Pa.C.S.A. §§ 9799.12 (defining a "sexually violent offense" as, *inter alia*, an offense designated as a Tier II sexual offense), 9799.24(a) (providing that "a court shall order an individual convicted of a sexually violent offense to be assessed by the" SOAB). An SVP designation carries lifetime registration. **See** 42 Pa.C.S.A. § 9799.15(a)(6).

[5] The trial court also advised Reese of his twenty-five year SORNA registration for this conviction of a Tier II offense.

or "a pervasive disregard for the rights of others beginning in early adolescence." ***Id***. at 13, 15. There was ***insufficient*** evidence to find Reese suffered from the former — sexual deviance. However, Lindemuth opined, within a reasonable degree of professional certainty, that Reese had the latter, chronic antisociality, as he met the diagnostic criteria for antisocial personality disorder.[6] ***See id***. at 21. Lindemuth defined this disorder as having a "pervasive pattern of disregard for, and the violation of, rights of others that begin[s] in childhood or early adolescence and continue[s] into adulthood," which "persists despite interventions."[7] ***Id***. at 15, 20-21.

_____

[6] Lindemuth testified that she was "not making a medical diagnosis, but [she] follow[ed] the criteria in the Diagnostic and Statistical Manual." N.T., 8/8/24, at 25.

[7] Lindemuth further defined antisocial personality disorder as:

> a pervasive pattern of disregard for, and the violation of, the rights of others occurring since the age of [fifteen], indicated by three or more of the following behaviors[:]
>
> [f]ailure to conform to social norms with respect to lawful behavior, as indicated by performing acts that are grounds for arrest; deceitfulness, as indicated by repeated lying, use of aliases, or conning others for . . . personal profit or pleasure; impulsivity or failure to plan ahead; irritability or aggressiveness, as indicated by repeated physical fights or assaults; reckless disregard for the safety of self or others; consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations; lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another; they are least [eighteen] years of age; and there is evidence of a conduct disorder occurring before the age of [fifteen] [*sic*].

*(Footnote Continued Next Page)*

In reaching this conclusion, Lindemuth reviewed the following mental health history from Reese's childhood and adolescence. First, when Reese was around seven years old, "he was . . . evaluated due to behavioral and emotional concerns." N.T., 8/8/24, at 16. This "evaluation described him as oppositional and noncompliant, [with] fighting and physical aggression." *Id*. at 16-17. Next, a 2008 report, made when Reese was ten years old,

> noted that he was aggressive in his psychologists' office, grabbing his mother's neck, trying to punch[,] kick and bite her. He was restrained by the police and sent to the hospital. [Reese] was diagnosed with bipolar disorder, intermittent explosive disorder, attention deficit disorder, and conduct disorder.

*Id*. at 17.

At age twelve, Reese "was evaluated again . . . by another psychologist," who diagnosed him with "impulse control disorder, oppositional defiant disorder, and ADHD." *Id*. At age fourteen, a psychiatric evaluation produced diagnoses of "ADHD, oppositional defiant disorder, and intermittent explosive disorder." *Id*. In 2015, when Reese was approximately seventeen years old, he underwent another psychiatric evaluation, "where he was diagnosed with ADHD, oppositional defiant disorder, and intermittent explosive disorder." *Id*. This evaluation also showed Reese "exhibited suicidal ideation, homicidal ideation, depression, anxiety, aggression, and concentration problems." *Id*. at 17-18.

---

N.T., 8/8/24, at 19-20.

Additionally, Lindemuth testified that she reviewed Reese's juvenile delinquency history. Lindemuth's report, which the Commonwealth entered into evidence, stated Reese had juvenile delinquencies of: disorderly conduct at age ten; harassment at age thirteen, for threatening to shoot two "women who worked for the Children's Aid Society where he was involved in services;" and conspiracy to commit theft by unlawful taking. Sexually Violent Predator Assessment, 2/13/14, at 6. For the harassment charge, Reese "was placed on [sixty] days house arrest and ordered to report to school as required," but he "violated the terms of his probation by failing to go to school as directed." *Id*. For the conspiracy charge, Reese "was sent to juvenile placement, where he struggled to adjust and was sent to multiple secure placements. During this time, his behaviors included physical and verbal aggression towards staff and peers, and homicidal and suicidal ideations which resulted in psychiatric hospitalizations." *Id*.

Lindemuth further testified that records showed that "throughout [Reese's] time in the juvenile system,"

> he was provided multiple forms of counseling interventions[, including] therapeutic support systems, mobile therapy, behavioral health services, behavioral specialist consulting services, wrap-around services, general counseling services, psychiatric services, and medication management.
>
> * * * *
>
> . . . That's a pretty exhaustive list of services. [T]hose are pretty common services available to individuals with problems . . . in their youth.

- 5 -

N.T., 8/8/24, at 18.

Lindemuth also reviewed Reese's adult criminal history, which began around 2016 and "persist[ed]" through the present. *Id*. at 19. Her report summarized his offenses, which included: simple assault and terroristic threats, for punching the victim's face with a knife in his hand; simple assault, for punching his ex-girlfriend in the face; disorderly conduct against another girlfriend; harassment; improper exhibition of a firearm or dangerous weapon; and use of drug paraphernalia. Reese had several prior adult probation violations and two pending probation violations, and he was the subject of two prior protection from abuse orders.

Lindemuth testified that Reese exhibited "many different types of problematic criminal behaviors . . . occurring over time, [which did not] seem to be impacted by consequence, whether it be therapeutic consequence or legal consequence." *Id*. at 15. Lindemuth reiterated that this persistent conduct, "despite interventions," was "a marker of the antisocial personality disorder." *Id*. Lindemuth thus opined Reese met the criteria for an SVP.

Reese did not testify or present any witnesses, but elicited Lindemuth's testimony that: (1) the facts of the underlying offense — "[t]hree instances of sex [with a minor] over the course of three months [—] would not be enough for [an SVP] determination for sexual deviance;" and (2) Lindemuth reviewed only Reese's juvenile mental health records, as she did not have any adult evaluations. *Id*. at 24, 26. Nevertheless, when Reese asked Lindemuth

whether she relied "solely" on his "juvenile information," Lindemuth replied she relied on both his mental health records and criminal history. *Id*. at 29. In closing argument, Reese contended that Lindemuth's reliance on his juvenile mental health records was improper, because a juvenile cannot be subject to an SVP assessment under SORNA. *See id*. at 32.

The trial court concluded Reese met the criteria for an SVP. Reese filed a timely post-sentence motion, challenging the SVP determination, which the court denied. Reese filed a timely notice of appeal and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Reese presents two issues for our review:

   I.   Whether the Commonwealth presented sufficient evidence to prove beyond clear and convincing evidence to support the trial court's determination that [Reese] is [an SVP] under 42 Pa.C.S.A. § 9799.24, where it relied solely upon a juvenile mental health diagnosis as a 'non-sexual' pathway to such designation?

   II.  Whether the "[SVP]" designation as provided under [SORNA] is unconstitutional and violates [Reese's] fundamental right to protect his reputation as secured by Pennsylvania Constitution Article I, Section 1, as applied to him, where his SVP designation is based exclusively upon juvenile mental health records and diagnosis to support such designation?

Reese's Brief at 10.

In his first issue, Reese challenges the sufficiency of the evidence supporting his designation as an SVP, where the Commonwealth "relied solely" on a mental health diagnosis he received as a child. Reese's Brief at 15. We consider the applicable standard of review:

A challenge to a trial court's SVP designation presents a challenge to the sufficiency of the evidence for which our standard of review is *de novo* and our scope of review is plenary. A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. . . . "We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied."

***Commonwealth v. Aumick***, 297 A.3d 770, 776-77 (Pa. Super. 2023) (*en banc*) (citations and footnote omitted).

SORNA defines an SVP as:

[a]n individual who committed a sexually violent offense . . . on or after December 20, 2012, who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9799.12. Section 9799.24(b), in turn, sets forth a non-exhaustive list of fifteen factors an SOAB member shall consider in assessing an individual:

(1) Facts of the current offense, including:

[List of seven factors]

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

- 8 -

(i) Age.

(ii) Use of illegal drugs.

(iii) ***Any mental illness, mental disability or mental abnormality***.

(iv) ***Behavioral characteristics that contribute to the individual's conduct***.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b)(1)-(4) (emphases added).

This Court has explained:

Whereas the SOAB member must consider the fifteen factors listed in section 9799.24(b), the trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the defendant is an individual who has "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12 (providing the definition of a "sexually violent predator").

***Aumick***, 297 A.3d at 778-79 (some citations omitted).

Finally, we note that when interpreting a statute,

"our paramount objective [is] to give effect to the intent of our General Assembly in enacting the particular statute under review." [***See***] 1 Pa.C.S.A. § 1921(a)). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.[C.S.]A. § 1921(b)."

***Commonwealth v. Brashear***, 331 A.3d 669, 673-74 (Pa. Super. 2024)

(some citations omitted).

- 9 -

On appeal, Reese challenges the sufficiency of the Commonwealth's evidence that he has a personality disorder that makes him likely to engage in predatory sexually violent offenses. In support, Reese avers his "SVP designation is [improperly] based exclusively [on] his childhood diagnosis," as SORNA "expressly" does not apply to children. Reese's Brief at 17. Reese cites *Interest of J.B.*, 107 A.3d 1 (Pa. 2014), in which the Pennsylvania Supreme Court distinguished "delinquent children [from] adult criminals" and held that "SORNA violates juvenile offenders' due process rights through the use of [an] irrebuttable presumption." *Id*. at 17-18. Additionally, Reese contends that his juvenile mental health diagnosis "alone was insufficient evidence to support his SVP designation," where Lindemuth had testified the facts of the instant case were insufficient to support an SVP determination. *Id*. at 15, 19-20.

After review of the record in the light most favorable to the Commonwealth, we determine the evidence was sufficient to support the finding that Reese met the criteria of an SVP. *See Aumick*, 297 A.3d at 776-77. As noted above, he challenges only the sufficiency of the evidence that he has a personality disorder that makes him likely to engage in predatory sexually violent offenses. *See* 42 Pa.C.S.A. § 9799.12.

First, we reject the factual premise in Reese's argument — that Lindemuth relied "solely" on his juvenile mental health records. Reese's Brief at 15. Lindemuth clearly testified that she also reviewed Reese's juvenile

*delinquency* history and adult criminal record, which spanned a few hundred pages. *See* N.T., 8/8/24, at 12, 29.

Second, we reject Reese's unsupported contention that SORNA does not apply to children. Section 9799.13 provides that registration requirements apply to "juvenile offender[s]" and "sexually violent delinquent child[ren]." 42 Pa.C.S.A. § 9799.13(8)-(8.1), (9). *Interest of J.B.* did not hold otherwise. Instead, that decision had a narrow ruling:

> that SORNA's registration requirements violate juvenile offenders' due process rights *by utilizing the irrebuttable presumption* that all juvenile offenders "pose a high risk of committing additional sexual offenses," 42 Pa.C.S.[A.] § 9799.11(a)(4),[8] because that presumption is not universally true and a reasonable alternative means currently exists for determining which juvenile offenders are likely to reoffend.

*Interest of J.B.*, 107 A.3d at 14 (emphasis added). The present case does not implicate the concerns underlying *Interest of J.B.*; Reese was not a juvenile when he committed the underlying offense and he did not suffer, while a juvenile, the application of the irrebuttable presumption.

Instead, Reese attempts to extrapolate the *Interest of J.B.* holding to mean that an SVP assessment cannot include a defendant's juvenile mental health records. We reject such an interpretation. *Interest of J.B.* made no

---

[8] Section 9799.11 sets forth the Pennsylvania General Assembly's legislative findings, and states, in pertinent part: "Sexual offenders pose a high risk of committing additional sexual offenses, and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S.A. § 9799.11(a)(4).

such pronouncement, nor did it involve any challenge to what materials an SOAB member could review when conducting an SVP assessment. Accordingly, we determine **Interest of J.B.** is not relevant to the issue presented.

Third, we determine that the plain language of Subsection 9799.24(b)(3) does not support Reese's argument. **See Brashear**, 331 A.3d at 673-74. Subsection 9799.24(b)(3) provides that an SVP assessment "shall include" examination of the defendant's age, "**any** mental illness, mental disability or mental abnormality," and "[b]ehavioral characteristics that contribute to the individual's conduct." 42 Pa.C.S.A. § 9799.24(b)(3)(i), (iii)-(iv) (emphasis added). The term "any" indicates there is no limitation on the scope of a defendant's mental health history that an SOAB member may consider.

Similarly, we conclude that Subsection 9799.24(b)(4) permits an SVP assessment to include review of a defendant's juvenile mental health records. That subsection requires review of "[f]actors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of **reoffense**." 42 Pa.C.S.A. § 9799.24(b)(4) (emphasis added). As discussed above, Lindemuth testified there are "two pathways to lifetime **reoffending**," including chronic antisociality. N.T., 8/8/24, at 13 (emphasis added). Lindemuth opined that Reese had such a condition — antisocial personality disorder, defined as having a "pervasive **pattern** of disregard for, and the

violation of, rights of others that **begin[s] in childhood or early adolescence and continue[s] into adulthood**," which "persists despite interventions." **Id**. at 15, 20-21 (emphases added). Accordingly, Reese's juvenile mental health history was relevant to Lindemuth's determination of whether his condition began in childhood or early adolescence, and whether it persisted into adulthood.

Finally, we determine no relief is due on Reese's reliance on Lindemuth's testimony, that the facts of the underlying case, alone, would not support an SVP finding. As stated above, Lindemuth testified there are two pathways, and while the facts of the instant case did not establish the former, sexual deviancy, Reese met the latter — chronic antisociality. Indeed, in response to Reese's cross-examination, Lindemuth testified that his antisocial personality disorder was distinct from sexual deviancy, as one could "have antisocial personality disorder and not commit a sex crime." N.T., 8/8/24, at 26. For the foregoing reasons, we determine no relief is due on Reese's first issue.

In his second issue, Reese avers SORNA's SVP designation violates his right to reputation, and is unconstitutional as applied to him because the designation "is based exclusively [on] juvenile mental health records and diagnos[e]s." Reese's Brief at 22. Reese acknowledges the Pennsylvania Supreme Court has determined that SORNA's SVP registration requirements are not criminal punishment. However, Reese maintains that "the 'non-sexual'

pathway contained within the definition of [an SVP] criminalized his childhood mental health diagnosis, [and then] was used as the sole support for" his SVP designation. *Id*. In other words, Reese asserts, one's "developing brain, childhood immaturity, impulsivity, or mental health struggles [should not] be used solely to support an SVP designation without any foundation in one's adulthood." *Id*. at 24. Reese requests this Court to "clearly delineate an age line to create the legal and constitutional floor for SORNA and SOAB . . . evaluators so childhood mental health is protected and excluded from SVP assessments." *Id*.

We have rejected Reese's claim that Lindemuth and the trial court relied "solely" on his juvenile mental health diagnoses in concluding he was an SVP.

With respect to Reese's constitutional challenges, we determine he has waived them for failure to raise them before the trial court. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *see also Commonwealth v. Jefferson*, 256 A.3d 1242, 1261 (Pa. Super. 2021) (*en banc*) (stating "it has long been true that failure to raise an issue in the trial court, even one of constitutional dimension, results in waiver of the issue on appeal").

At the SVP hearing and in his post-sentence motion, Reese argued only that it was improper to consider his juvenile mental health records because SORNA does not apply to juveniles. *See* N.T., 8/8/24, at 32; *see also* Post-Sentence Motion for Sentence Modification, 8/15/24, at unnumbered 2. Reese

- 14 -

raised his right to reputation and an "as-applied" constitutional challenge, for the first time, in his Rule 1925(b) statement. *See Commonwealth v. Jones*, 271 A.3d 452, 457 (Pa. Super. 2021) (stating that "[r]aising an issue for the first time in a Rule 1925(b) statement is insufficient to prevent waiver of an issue that the appellant failed to raise while the case was pending in the trial court"). As we find waiver, we conclude no relief is due on Reese's second issue.

In sum, we affirm the trial court's finding that Reese is an SVP under SORNA, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/27/2025